```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF GEORGIA
                    BRUNSWICK DIVISION
```

| | | |
|---|---|---|
| HEATHER CHANG and LORNA JOHNSON, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GLYNN COUNTY SCHOOL DISTRICT, MICHAEL BULL, DAVE SMITH, LAVERNE COOPER, VENUS HOLMES, SHAW McVEIGH, ROBERT STRICKLAND, EARL PERRY, and MIKE HULSEY, | : | |
| | : | |
| Defendants. | : | NO. CV206-099 |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs, Heather Chang and Lorna Johnson, filed this suit on May 4, 2006, against Defendants, the Glynn County School District, the Glynn County Schools' Superintendent Michael Bull, and the individual members of the Glynn County Board of Education, alleging that their dismissals violated their rights under the equal protection clause of the Fourteenth Amendment to the Constitution.

On May 11, 2006, the parties agreed to a temporary restraining order, prohibiting any adverse employment action by Defendants against Plaintiffs until further order of the Court. The Court scheduled a hearing on Plaintiffs' request for a preliminary injunction for June 16, 2006. On May 26,

2006, Defendants moved for a continuance to provide the State of Georgia with additional time to consider the issues raised in this case, particularly, Plaintiff's facial challenge to the state statute at issue. Defendants' motion for a continuance was granted.

The parties expressed a desire to expedite the litigation, and agreed to advance and consolidate the hearing with a trial on the merits, excepting issues concerning damages, fees, and expenses. Dkt. No. 21 at 5; Dkt. No. 31 at 3 n.3. On August 15, 2006, the Court held an evidentiary hearing on Plaintiffs' motion for declaratory and injunctive relief. After hearing evidence and arguments of counsel for the parties, pursuant to Rules 52(a), 57, and 65 of the Federal Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

### **FINDINGS OF FACT**

1. Chang and Johnson are Jamaican citizens, and are lawful residents of Glynn County, Georgia.
2. Plaintiffs are certified public school teachers in accordance with state law, as set forth in Georgia Code sections 20-2-200 through 20-2-205 (2005 & 2006 Supp.).

3.  Chang and Johnson were employed as public school teachers in the Glynn County School District during the 2005-06 school year.

4.  On April 11, 2006, the Glynn County Board of Education voted unanimously to decline to renew Plaintiffs' employment contracts for the 2006-07 academic year.

5.  The School Board directed "Dr. Bull to not renew the contracts of certified personnel who are Non-U.S. Citizens per Georgia Code [§] 45-2-7 unless there is no person of U.S. citizenship available to perform the job." Dkt. No. 1, Ex. A at 3.

6.  Thereafter, Bull wrote to Chang and Johnson, informing them that they would not be offered a contract for the upcoming school year as a teacher. The Superintendent enclosed a copy of Georgia Code section 45-2-7 as the reason for this decision.

7.  That law provides, in pertinent part, that:

    > no department of the state government or any political subdivision thereof shall employ any alien for any purpose until a thorough investigation has been made and it is ascertained that there is no qualified American citizen available to perform the duty desired.

    Ga. Code Ann. § 45-2-7 (2002).

8.  Other noncitizens are working as school teachers for the School District during 2006-07 academic year. Certain alien teachers are employed through a North Carolina company, Visiting International Faculty. Other noncitizen teachers have been retained based on the statutory provision that no "qualified American citizen [is] available to perform the duty desired." Ga. Code Ann. § 45-2-7 (2002).

9.  In 1976, Georgia Attorney General Arthur K. Bolton issued an opinion cautioning state agencies that this statute

    > cannot be constitutionally applied to exclude aliens from public employment except to bar them from positions that participate directly in the formulation, execution or review of broad public policy or from positions where citizenship otherwise bears some rational relationship to the special demands of the particular position.

    Op. Att'y Gen. 76-74.

10. Bolton also opined that "classifications based on alienage are subject to strict scrutiny and, to be constitutional, must advance a special state interest." Id.

**CONCLUSIONS OF LAW**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343(a)(3)(1993) and 42 U.S.C. § 1983 (2003).

2. To obtain a preliminary injunction, Plaintiffs must show a substantial likelihood of success on the merits, a threat of irreparable harm if the injunction is not granted, that the threatened injury to Plaintiffs outweighs threatened harm to Defendants, and that granting the injunction is in the public interest. See Suntrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1265 (11th Cir. 2001).

3. The Fourteenth Amendment provides, in part, that "[N]or shall any State . . . deny to any person within its jurisdiction the equal protection of the laws." Aliens are protected persons under the Fourteenth Amendment. Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886).

4. "Resident aliens, like citizens, pay taxes, support the economy, serve in the Armed Forces, and contribute in myriad other ways to our society. It is appropriate that a State bear a heavy burden when it deprives them

of employment opportunities." <u>In re Griffiths</u>, 413 U.S. at 719, 722 (1973).

5. [Classifications] based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny. Aliens as a class are a prime example of a 'discrete and insular' minority (see <u>United States v. Carolene Products Co.</u>, 304 U.S. 144, 152-53 n.4 (1938)) for whom such heightened judicial solicitude is appropriate.

<u>Graham v. Richardson</u>, 403 U.S. 365, 372 (1971) (footnotes omitted).

6. Generally, a state law that discriminates against aliens can be sustained only if it can withstand strict judicial scrutiny. To do so, the law must advance a compelling state interest and be narrowly tailored toward that end. <u>Bernall v. Fainter</u>, 467 U.S. 216, 219 (1984); <u>Sugarman v. Dougall</u>, 413 U.S. 634, 635-43 (1973)(finding a state law that broadly excluded aliens from public employment unconstitutional).

7. "We have, however, developed a narrow exception to the rule that discrimination based on alienage triggers strict scrutiny. This exception has been labeled the 'political function' exception and applies to laws that exclude aliens from positions intimately related to the

process of democratic self-government." <u>Bernall</u>, 467 U.S. at 220.

8. Accordingly, the Supreme Court fashioned a two-part test to determine whether rational basis scrutiny would apply to a law discriminating on the basis of alienage under the "political function" exception:

> First, the specificity of the classification will be examined: a classification that is substantially overinclusive or underinclusive tends to undercut the governmental claim that the classification serves legitimate political ends. The classification in <u>Sugarman</u> itself -- all members of the competitive civil service -- could not support the claim that it was an element in "the State's broad power to define its political community," . . . because it indiscriminately swept in menial occupations, while leaving out some of the State's most important political functions. Second, even if the classification is sufficiently tailored, it may be applied in the particular case only to "persons holding state elective or important nonelective executive, legislative, and judicial positions," those officers who "participate directly in the formulation, execution, or review of broad public policy" and hence "perform functions that go to the heart of representative government."

<u>Cabell v. Chavez-Salido</u>, 454 U.S. 432, 440 (1982) (internal citations omitted).

9. To determine whether the statute in question is too broadly drawn to withstand constitutional scrutiny,

> the inquiry is whether the restriction reaches so far and is so broad and haphazard as to belie the State's claim that it is only attempting to ensure that an important function of government be in the hands of those having the "fundamental legal bond of citizenship." . . . Under this standard, the classifications used need not be precise; there need only be a substantial fit.

Id. at 442 (citation omitted).

10. Where the challenged law applies equally to "the sanitation man, . . . the typist . . ., as well as the person who directly participates in the formulation and execution of important state policy[,]" the law is fatally overinclusive. Sugarman, 413 U.S. at 643.

11. The Georgia statute sweeps broadly, generally banning aliens from all public employment. On that basis, section 45-2-7 is distinguishable from the law upheld in Ambach v. Norwick, 441 U.S. 68, 75-81 (1979) (applying rational basis review to narrowly-drawn law that prohibited aliens from being public school teachers, unless they intended to apply for citizenship).

12. Under the first step of the two-part test enunciated in Cabell, the Georgia statute is not entitled to rational basis review, which would apply only if the law was

8

specifically directed at those public employees who "perform functions that go to the heart of representative government." Id. at 440. Instead, in all material respects, the Georgia law parallels the deficiencies of the statute struck down in Sugarman. As a result, strict scrutiny applies. See Bernall, 467 U.S. at 219-20.

13. The challenged Georgia statute was not drafted with sufficient precision to withstand strict scrutiny. See Sugarman, 413 U.S. at 643. The law is fatally overinclusive because it does not ensure a "substantial fit" between the law and those public positions that "go to the heart of representative government." Cabell, 454 U.S. at 442, 440.

14. The fact that the statute allows aliens to be hired as public servants where "a thorough investigation has been made and it is ascertained that there is no qualified American citizen available to perform the duty desired," does not remedy the constitutional defect. See Hampton v. Moo Sun Wong, 426 U.S. 88, 91 (1976); Sugarman, 413 U.S. at 635.

15. Neither Chang nor Johnson were discharged from public employment "on the basis of an individualized

determination [that] rest[ed] on legitimate state interests that relate to qualifications for a particular position or to the characteristics of the employee." Id. at 413 U.S. at 646-47 (emphasis added); see also Ambach, 441 U.S. at 76-80.

16. Plaintiffs have demonstrated that they are likely to succeed on the merits, and that they may suffer irreparable injury if an injunction is not granted. Unless Defendants are restrained from implementing section 45-2-7 on a general basis, Plaintiffs will not be able to continue to work in their chosen professions, for a reason that is at odds with their federally-protected constitutional rights.

17. Any threat of harm to Defendants is outweighed by the threat of harm to Plaintiffs if the injunction is not granted. This is particularly true given that Defendants have retained other noncitizens as public school teachers for the 2006-07 academic year.

18. Ensuring that the government follows the Constitution is in the public interest.

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court will enter a preliminary injunction herewith.

**SO ORDERED**, this ___15___ day of August, 2006.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA